**Case No. 1:18-CV-01793-CFC**

## IN THE UNITED STATED DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | |
| Landsource Communities | |
| Development LLC, et al., | Civil Action No: 1:18-CV-01793-CFC |
| Debtors. | Bankruptcy Case No. 08-11111 (KJC) |
| Citizens Against Corporate Crime, LLC, | BAP No. 18-53 |
| Appellant, | |
| v. | |
| Lennar Corporation, | |
| Appellee. | |

**REPLY BRIEF OF APPELLANT CITIZENS AGAINST CORPORATE CRIME, LLC**

Stamatios Stamoulis (DE No. 4606)
**Stamoulis & Weinblatt, LLC**
6 Denny Road, Suite 307
Wilmington, DE 19089
Email: stamoulis@swdelaw.com
- and -
Robert E. Barnes (*pro hac vice*)
Tony Nasser (*pro hac vice*)
**Barnes Law, LLP**
601 South Figueroa Street, Suite 4050
Los Angeles, California 90017
Tel: 310-510-6211
Fax: 310-510-6225
Email: robertbarnes@barneslawllp.com
Email: tonynasser@barneslawllp.com
*Attorneys for Citizens Against Corporate Crime, LLC*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................ ii

Introduction ..................................................................................... 1

Argument .......................................................................................... 3

I.   The Standard of Review is *De Novo* For Questions of Law ................................ 3

II.  The Bankruptcy Court Abused Its Discretion By Reopening The Landsource, LLC Chapter 11 Bankruptcy Cases ................................................................... 6

III. The Bankruptcy Court Erred By Granting Lennar's Motion To Enforce The Injunction And Release In The 2009 Landsource, LLC Bankruptcy Confirmation Plan Against CACC And Enjoining CACC From Pursuing The FCA Action In California ......................................................................... 11

IV.  The Bankruptcy Court Erred By Not Abstaining From This Matter ........................................................................................... 19

Conclusion ....................................................................................... 22

CERTIFICATE OF COMPLIANCE .................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Am. Flint Glass Workers Union v. Anchor Resolution Corp.*,

    197 F.3d 76 (3d Cir. 1999) .......................................................................5, 6

*Broomall Industries, Inc. v. Data Design Logic Systems, Inc.*,

    786 F.2d 401 (Fed. Cir. 1986) ......................................................................18

*Harbour Trust Co. v. Aaron (In re Plusfunds Grp., Inc.)*,

    589 F. App'x 41 (2d Cir. 2015) ......................................................................8

*In re Arctic Glacier Int'l, Inc.*,

    901 F.3d 162 166 (3d Cir. 2018) ..................................................................10

*In re Fla. Precast Concrete, Inc.*,

    139 B.R. 37 (Bankr. M.D. Fla. 1992).............................................................8

*In re LaRoche Industries, Inc.*,

    312 B.R. 249 (Bankr. Del., 2004)..................................................................11

*In re Lazy Days' RV Ctr. Inc.*,

    Case No. 09-13911-KG, D.I. 166 (Mem. Order) (Bankr. D. Del. June 16,

    2011), aff'd 724 F.3d 418 (3d Cir. 2013) ......................................................9

*In re Optical Technologies, Inc.*,

    425 F.3d 1294 (11th Cir. 2005) .................................................................5, 6

*In re Plusfunds Group, Inc. v. Harbour Trust Co. LTD*,

    505 B.R. 419 (S.D.N.Y. 2014) .......................................................................8

*In re Plusfunds Grp., Inc.*,

    Case No. 06-10402 (JLG) (Bankr. S.D.N.Y. Apr. 21, 2015).........................8

*In re Resorts Intern., Inc.*,

    372 F.3d 154 (3d Cir.2004) ..........................................................11

*In re Shenango Grp. Inc.*,

    501 F.3d 338 (3d Cir. 2007) ............................................... 4, 5, 8

*In re: Holley Performance Products, Inc. et al.*,

    No. 09-13333 (KJC) (Dist. of Del, July 31, 2015).........................7

*U.S. ex rel Gebert v. Transp. Administrative*,

    260 F.3d 909 (8th Cir. 2001) .......................................................16

*U.S. ex rel. Hall v. Teledyne Wah Chang Albany*,

    104 F.3d 230 (9th Cir. 1997) .......................................................15

*U.S. ex rel. McNulty v. Reddy Ice Holdings, Inc.*,

    835 F.Supp.2d 341 (E.D. Mich. 2011) ........................................15

*U.S. ex. rel. Green v. Northrop Corp.*,

    59 F.3d 953 (9th Cir. 1995) ................................................ 15, 18


**Statutes**

11 U.S.C. § 1141 ................................................................. 14, 18

28 U.S.C. § 1334 ......................................................................20

California Government Code § 12652 ............................................1, 13

California Government Code § 12654 ..................................................3

Federal Rules of Bankruptcy Procedure § 5011 ......................................................20

Federal Rules of Bankruptcy Procedure § 7052 ......................................................20

Federal Rules of Bankruptcy Procedure § 9014 ......................................................20

Federal Rules of Bankruptcy Procedure § 9023 ......................................................20

Federal Rules of Bankruptcy Procedure § 9024 ......................................................20

Federal Rules of Civil Procedure § 59 ....................................................................20

Federal Rules of Civil Procedure § 60 ....................................................................20

## **Introduction**

Lennar Corporation's ("Lennar") Answering Brief of Appellee ("Answering Brief") obfuscates the pertinent questions at issue in this appeal, attempting to characterize the False Claims Act ("FCA") lawsuit as a dispute between a man by the name of Nicholas Marsch and Lennar directly, as argued to the United States Bankruptcy Court for the District of Delaware. Yet, this is inaccurate. Lennar was not sued by Nicholas Marsch concerning the application of an injunction from 2009; rather, Lennar was sued by the People of the State of California concerning violations of California State law. Citizens Against Corporate Crime, LLC ("CACC") is only the relator of the FCA claim on behalf of the People, as authorized by the California FCA. See Cal. Gov. Code § 12652(c). In order to avoid this weightier action, Lennar removed the consideration of the case to the court geographically furthest from the original action—taking it from Sacramento, California, to Delaware—and sought to apply an injunction from 2009 to bar the case. Incredibly, Lennar achieved the unprecedented result it sought to obtain. Nevertheless, the law on the subject is clear: for the People to be enjoined from pursuing an FCA action, the prosecuting authority must have had notice of the potential FCA violations *and* a reasonable opportunity to conduct an investigation prior to the injunction.

Thus, there was only one material question of fact, which was never disputed by any party and was confirmed by the California Office of the Attorney General ("CAGO"): the CAGO did not have notice of nor was informed about any potential California FCA violation by Lennar prior to 2017, until CACC notified the CAGO

1

by filing the FCA lawsuit under seal, and the CAGO never investigated nor had a reasonable opportunity to investigate the potential violation until 2017, at which time the CAGO did undertake an investigation of the claims that took eleven months. As a result, when the Delaware Bankruptcy Court enjoined the FCA action based upon the 2009 confirmation plan and release, the court committed legal error because it considered only whether Nicholas Marsch had notice of any potential FCA violation in 2009 and did not consider whether the CAGO had notice as prosecuting authority. CACC's or Mr. Marsch's role or involvement is irrelevant and, even if it were relevant, there is no evidence provided by Lennar that CACC or Mr. Marsch participated in creating or approving the releases or waivers at issue. Though Lennar argues that the Delaware Bankruptcy Court's order does not impact the CAGO, this also is misleading, as the FCA lawsuit in California was dismissed by operation of the Delaware Bankruptcy Court's order granting Lennar's motion to enforce.

Indeed, if the CAGO had notice or an opportunity to investigate the potential FCA violation in 2009, when Lennar asserts, then there would have been no need to remove the FCA action filed in Sacramento to the Eastern District of California or to the Delaware Bankruptcy Court; the FCA action would be time-barred by the statute of limitations, which would have expired in 2012. Lennar could have more easily, more quickly, and less costly filed a demurrer (motion to dismiss) in the Sacramento Superior Court based on the statute of limitations and dismissed the case at that jurisdiction if the FCA claim was truly part-and-parcel of the injunction or

release that Lennar asked the Delaware Bankruptcy Court to Enforce.[1]  Still, Lennar never sought to move to dismiss the FCA complaint or raised the statute of limitations as a defense, contradictory its central argument. See Cal. Gov. Code § 12654(a).

The question put forth before this Court is not new and is not as convoluted as Lennar makes it seem: Can a California FCA claim be released by a private person, who is not a debtor, when the prosecuting authority was not provided notice or an opportunity to investigate the potential violation? As all case law indicates, as confirmed by public policy, the answer must be "no."

Because of this, there was no good cause to reopen the bankruptcy cases to adjudicate a dispute regarding California State law in front of a judge that admittedly did not draft the order being contested; there was good cause to abstain from further consideration of the issues even after reopening the case; and, finally, it was legal error to grant Lennar's motion to enforce the injunction from the Landsource, LLC Confirmation Plan against CACC and applied to the FCA lawsuit. In light of the undisputed facts and applicable law, the Delaware Bankruptcy Court's orders must be vacated or reversed.

### Argument

### I.   The Standard of Review is *De Novo* For Questions of Law

Contrary to Lennar's argument otherwise, *de novo* review is proper for review

---

1  The same law firms that represented Lennar for the Landsource, LLC bankruptcy represent Lennar now. See Supp. APP. 1503.

of the Delaware Bankruptcy Court's decisions regarding questions of law. In arguing that abuse of discretion is the only standard that may be applied, Lennar relies primarily on one case, *In re Shenango Grp. Inc.*, 501 F.3d 338 (3d Cir. 2007), which states that a bankruptcy court's interpretation of its own order ought to be subject to review for abuse of discretion. However, *Shenango* does not simply apply a blanket abuse of discretion standard, and this case does not regard mere interpretation of a bankruptcy court's order. In *Shenango*, the Third Circuit explained that a court reviewing a bankruptcy court's order begins with a *de novo* standard of review. *Id.* at 344–45 ("In construing a confirmed plan of reorganization, we apply contract principles. Because the construction of a contract generally presents a question of law, we exercise plenary review."). However, a reviewing court cannot stop there, it must "distinguish between the review of a bankruptcy court's application of legal principals and the review of a bankruptcy court's actual interpretation of an ambiguous provision in its own order." *Id.* at 346. As to the portions that are ambiguous, then, and only to that extent, a deferential abuse of discretion standard applies. *Ibid.* The deferential abuse of discretion standard "should not apply, *of course*, if the issue being reviewed presents only a question of law." *Id.* at 346 (emphasis added). Similarly, a *de novo* standard of review also applies as to that initial question of whether the language itself is ambiguous. *Ibid.* ("Thus, we conclude that the initial inquiry of whether Shenango's Reorganization Plan is ambiguous is subject to *de novo* review.).

If CACC were contesting specific language in the Confirmation Plan or was

4

arguing an alternative interpretation to Lennar, then an abuse of discretion standard may be applicable. This is not the case. Rather, unlike *Shenango*, there is no dispute over the terms of the confirmation order and CACC is not contesting any language in the order as ambiguous or the interpretation thereof. *See id.* at 344 ("Shenango contends that […] there is only one reasonable construction of the Reorganization Plan and that interpretation is that Shenango is not obligated to fully fund any increase in benefits…"). CACC is contesting that the language in the confirmation plan, however interpreted, simply cannot enjoin the People of the State of California, and by extension a relator under California's FCA statutes, as a matter of law, for which this Court exercises plenary review. See *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999).

Lennar's analysis, and argument, falters by ignoring the requirement that a reviewing court "must 'break down mixed questions of law and fact, applying the appropriate standard to each component." *Am. Flint Glass Workers.*, *supra*, 197 F.3d at 80. Both the Third and Eleventh Circuits agree that:

> simply because a bankruptcy court's interpretation of its order is entitled to deference does not 'insulate all aspects of the bankruptcy court's opinion from anything more searching than abuse of discretion review. The rationale for deferring to a court's interpretation of its own order does not extend to its analysis of broad legal principles.

*Shenango*, *supra*, at 346, citing *In re Optical Technologies, Inc.*, 425 F.3d 1294, 1303 (11th Cir. 2005). For the questions presented in this case, this Court must

exercise plenary review and conduct a *de novo* analysis.[2]  *Am. Flint Glass Workers.*, *supra*, 197 F.3d at 80.

## II.   The Bankruptcy Court Abused Its Discretion By Reopening The Landsource, LLC Chapter 11 Bankruptcy Cases

To correct certain mischaracterizations of CACC's brief, though a bankruptcy court may have "broad discretion" to reopen cases, CACC does not concede that a bankruptcy court's order reopening a closed case is entitled to great deference. See Answering Brief, at 28 fn. 8. Rather, as explained in the opening brief and the immediately preceding section, a bankruptcy court's decision whether to reopen a case is reviewed on an abuse of discretion standard, but a reviewing court must carefully distinguish between questions of law and questions of fact and "simply because a bankruptcy court's interpretation of its order is entitled to deference does not 'insulate all aspects of the bankruptcy court's opinion from anything more searching than abuse of discretion review." *In re Optical Technologies, Inc.*, *supra*, 425 F.3d at 1303; see OB at 1–2.

Additionally, though CACC's opening brief presents six factors to consider when reviewing an order reopening a closed bankruptcy case, it is not advocating this court to apply a "six-factor test." See Answering Brief at 31. Rather, these six items were identified as factors that a "Court should consider" by the same judge at the same court. See, *In re: Holley Performance Products, Inc. et al.*, No. 09-13333

---

2  In Lennar's introduction, Lennar even concedes that "no special deference is necessary here." Answering Brief at 6.

(KJC) (Dist. of Del, July 31, 2015), citing *In re Antonious*, 73 B.R. 400, 405–06 (Bankr. E.D. Pa. 2007). Though the Delaware Bankruptcy Court considered other factors in addition to the six enumerated in the opening brief, the Delaware Bankruptcy Court seemingly disregarded without consideration the six applicable factors that heavily preponderate in favor of *not* reopening the case. See App 0378 (D.I. 3582-2, Ex. 25 (07/17/18 Hr'g Tr.) at 32:14–33:14). In light of these weighty factors, no reasonable person would adopt the Delaware Bankruptcy Court's view that, simply because the relator to the California FCA action may have been involved in some way in the underlying bankruptcy case, the bankruptcy court should reopen a case that is already pending in two other Article III forums with the ability to determine the dispute, where a California court is a more appropriate venue to hear a case in which the People of California are the real-party-in-interest and that is brought under state law, where it is clear that the debtor would not be entitled to any relief, where the case has been closed for nine years, and where the Bankruptcy Court judge reopening the case admittedly did not draft the order being reviewed. See App 0378 (D.I. 3582-2, Ex. 25 (07/17/18 Hr'g Tr.) at 32:19–33:1 ("And that when there's legitimate reason to have another court decide an issue that I would also have jurisdiction over, I normally weigh very heavily in having that court do it especially when one of the courts is an Article III court, which in Stern, the Supreme Court of the United States has said are the experts, especially when it comes to interpreting an order that I did not draft, as I typically don't in this practice."); OB at 14–20.

Concerning Lennar's argument, and contrary thereto, *In re Plusfunds Group, Inc. v. Harbour Trust Co. LTD* is still good law. See Answering Brief at 32, fn. 9. Though the Second Circuit remanded the decision not to reopen the case back to the bankruptcy court for further consideration, that order remanding the case was a summary order with no precedential effect. *Harbour Trust Co. v. Aaron (In re Plusfunds Grp., Inc.)*, 589 F. App'x 41, 43 (2d Cir. 2015) ("Summary Order"). Shortly thereafter, the bankruptcy court reaffirmed its order denying the motion to reopen the case, thoroughly discussing and reviewing the requisite "cause" to reopen a bankruptcy proceeding. *In re Plusfunds Grp., Inc.*, Case No. 06-10402 (JLG) (Bankr. S.D.N.Y. Apr. 21, 2015). In so doing, the court identified many of the same factors identified in *Holly Performance Products* and determined that prejudice was not a requisite factor to deny a motion reopening a case. *Ibid.* The relevant parts of the opinion have not been overruled.

Similarly, though *In re Florida Precast Concrete, Inc.* did not involve enforcement of a bankruptcy court order, it nevertheless considered the jurisdiction of both a bankruptcy court and reviewing district court for all civil proceedings arising under, arising in, or related to cases under Title 11, which is directly applicable. *In re Fla. Precast Concrete, Inc.* 139 B.R. 37, 38 (Bankr. M.D. Fla. 1992). Furthermore, as the case repeatedly cited by Lennar confirms, contract principles apply to a confirmed plan of reorganization just as a breach of warranty action that was reviewed in *Florida Precast*. See *Shenango*, *supra*, 501 F.3d 344–45 ("In construing a confirmed plan of reorganization, we apply contract principles.

Because the construction of a contract generally presents a question of law, we exercise plenary review.").

In fact, it is the authority relied upon by Lennar that is not relevant nor applicable to this case. Concerning the motion to reopen, Lennar relies primarily on *In re Lazy Days' RV Ctr. Inc.*, Case No. 09-13911-KG, D.I. 166 (Mem. Order) at *4 (Bankr. D. Del. June 16, 2011), *aff'd* 724 F.3d 418, 422–23 (3d Cir. 2013). Yet, the facts of that case have no application here. First, the party seeking to reopen the cases in *Lazy Days* were the reorganized debtors of the bankruptcy, not a creditor to the bankruptcy—as Lennar. 724 F.3d at 420–21. Similarly, the debtor in *Lazy Days* sought to reopen the case and participated in the reopened proceedings, whereas the debtor here—Landsource LLC—did not seek nor participate in the reopened proceedings. *Ibid.* Second, in *Lazy Days* the settlement agreement was between the reorganized debtor and a creditor, which were the very same parties that held a dispute outside of the bankruptcy court; by contrast, here, the dispute outside of the bankruptcy court is a California State FCA action between the People of the State of California, who were never represented at the bankruptcy court, and Lennar corporation. *Ibid.* Stated simply, the justification for reopening the bankruptcy case in *Lazy Days*—a dispute between the creditor and debtor to the bankruptcy—is not present in this dispute Lennar brought to the Delaware courts.

Similarly, the *Travelers* case is not instructive, but rather inapplicable. Therein the Supreme Court was not concerned with any FCA claims and based its conclusion on the dispositive reasoning that parties to a release should not be able to

"collateral[ly] attack" a bankruptcy court's order after the fact. See 557 U.S. 137, 154 (2009). However, as elaborated in these briefs, the CAGO *had no notice* of the potential FCA violations prior to the release or injunction and therefore could not have brought or raised any challenged to the injunction based thereon. Cf. *In re Arctic Glacier Int'l, Inc.* 901 F.3d 162 166 (3d Cir. 2018) (a bankruptcy court's confirmation order bars challenges to the plan "that could have been raised"). Because of this difference, *Travelers* did not consider the unique policies implicated in FCA actions and is inapposite to consider in this action when an FCA claim is pending in state court against a creditor to the bankruptcy cases. See *Travelers*, *supra*, 557 U.S. at 153–54. Indeed, the Supreme Court explicitly stated that the holding in *Travelers* "is narrow." *Id.* at 154; *see also id.* at 156 (Stevens, J., Ginsburg, J., dissenting) ("In my view, the injunction bars only those claims against [the debtor's] insurers seeking to recover from the bankruptcy estate for [the debtor's] misconduct, not those claims seeking to recover against the insurers for their own misconduct.").

In the face of this inapplicable authority, CACC's argument stands: No reasonable person would have reopened the bankruptcy cases if all relevant factors as identified by CACC were considered, instead of only the two factors the Court did consider, which is an abuse of discretion. See OB at 9–14; Answering Brief at 27–28. Furthermore, the strong public policy applying to closed bankruptcy cases was not shown by either the Bankruptcy Court or Lennar in its Answering Brief to be inapplicable in this case or overweighed by any other considerations. See

Answering Brief at 33; see also 11 U.S.C. § 1141(d)(6). The bankruptcy court did not have jurisdiction to reopen the cases, and even retention of jurisdiction provisions in a plan of reorganization or confirmation order will not be given effect if the contested matter does not have a "close nexus to the bankruptcy plan or proceeding." *In re Resorts Intern., Inc.*, 372 F.3d 154, 168–69 (3d Cir.2004). "[N]either the bankruptcy court nor the parties can write their own jurisdictional ticket." *In re LaRoche Industries, Inc.*, 312 B.R. 249, 257 (Bankr. Del., 2004) (citing *In re Resorts Intern., Inc.*, 372 F.3d 154, 161 (3d Cir.2004)). It was an abuse of discretion to reopen the Landsource, LLC Chapter 11 bankruptcy cases to resolve this dispute.

### III.   The Bankruptcy Court Erred By Granting Lennar's Motion To Enforce The Injunction And Release In The 2009 Landsource, LLC Bankruptcy Confirmation Plan Against CACC And Enjoining CACC From Pursuing The FCA Action In California

As in the bankruptcy court, Lennar spends nearly its entire briefing discussing non-parties to the underlying California FCA lawsuit, substituting the CAGO, CalPERS, and Nicholas Marsch as is convenient to support its argument, seeking to misdirect this Court, as it did the bankruptcy court, to lose focus of the actual real-party-in-interest for which CACC is merely a relator and stands-in-the-shoes-of: the People of the State of California. Yet, again, as in Lennar's moving papers and as identified in CACC's opening brief, Lennar never asserts that the CAGO ever participated or investigated any potential FCA claims, which is the sole material

question at issue. See Answering Brief; APP 0416–460 (D.I. 3581). Instead, Lennar

creates new purported questions of fact, such as who owns or controls CACC, which

are wholly irrelevant—let alone material—to the issue of whether a California FCA

action could have been released by operation of the 2009 Confirmation Plan at issue

in this case. See Answering Brief at 9, 11, 36–39. Contrary to Lennar's argument,

CACC's ownership was never contested or disputed and the information was readily

available in the public record.[3]  Rather, CACC has always asserted and continues to

assert that Mr. Marsch's role is irrelevant.[4]  Similarly, Lennar is incorrect in stating

---

3 Lennar writes that this information was "in the bowels of the *qui tam* record,"
   which is not accurate. See Answering Brief at 19, fn. 6. This information was
   readily available in the documents publicly filed in the California Superior Court
   for the County of Sacramento, which contained less than 50 entries on the docket
   at the time. See APP 0673 (*Citizens Against Corporate Crime LLC*, as Relator v.
   *Lennar Corporation*, Sacramento Superior Court Case No. 34-2017-00208469-
   CU-FR-GDS (filed 02/24/2017), at Dkt. No. 22).

4 In Lennar's Answering Brief Lennar falsely states that CACC somehow "pivoted
   and misdirected" at one point and raised "misguided and untimely arguments" that
   CACC should not be bound by the Injunction and Release "[a]s a matter of
   policy." Answering Brief at 39. Contradicting this assertion, these very same
   arguments were raised in CACC's opposition to Lennar's motion to reopen the
   bankruptcy proceeding, for which Lennar accused CACC of "mostly skip[ping]
   over the reopening issue altogether and argues that this Court has no power to
   enforce its own order or injunction because CACC's lawsuit alleges that Lennar
   perpetrated a fraud on 'the State of California'". APP 0295–97, 300–302 (D.I.

that "it is undisputed that the allegations of the California Action 'relate to' the Landsource bankruptcy and Plan." Answering Brief at 37. This was contested by CACC at the Delaware Bankruptcy Court and in CACC's opening brief because the claims and allegations in the FCA complaint did not ripen or mature until *after* the effective date of the reorganization plan. See APP 0104–0127; APP 0513–14 (D.I. 3590); OB at 31.

Although it is not apparent from Lennar's Answering Brief, it is not ambiguous who is the real-party-in-interest to this lawsuit. The CAGO confirmed this very fact in its filing to the bankruptcy court, which stated, in relevant part: "Here, the real party in interest in any CFCA claim against Lennar is the People of the State of California." App 0522 (D.I. 3593). Notably, the CAGO did not stop there; the CAGO elaborated that the underlying FCA claim *could not be released by any private person*, such as Nicholas Marsch or any company he owns:

> A CFCA claim belongs to the People of the State of California, and can only be waived or released by the Attorney General. Cal. Govt. Code § 12652(c)(l) ("[a] person may bring a civil action for a violation of this article for the person and ... the State of California in the name of the state ... "). The only government entities with standing under the CFCA are the Attorney General (for CFCA violations involving state funds) and local prosecuting authorities (for political subdivision funds). Cal. Govt. Code§ 12652(a) through (c). "Once filed, the action may be dismissed only with the written consent of the Court and the Attorney General .... *No claim/or any violation ... may be waived or released by any private person ...* " Cal. Govt. Code§ 12652(c)(l) (emphasis added).

APP 0522 (D.I. 3593).

---

3552); APP 0315 (D.I. 3556).

Indeed, the CAGO went even further, and explained to the Delaware Bankruptcy Court that, independently of Nicholas Marsch's involvement in the bankruptcy case, "False Claims Act claims are not dischargeable in bankruptcy,'" citing the very same statute that Lennar claims (without any supporting citations or authority) is inapplicable to this case—Section 1141(d)(6)(A) of Title 11 of the United States Code. APP 0523–24 (D.I. 3593); see also Answering Brief 44–45. This was not merely a blanket assertion made by the CAGO, but specifically applied to the claims in the underlying FCA lawsuit and to the bankruptcy proceeding at issue, as the CAGO confirmed that both types of fraud alleged in the FCA complaint "plainly fall within the CFCA." *Ibid.* Because of this, the CAGO agreed with the position presented by CACC, that "any CFCA claims *brought in the name of the People* were not discharged and survived the Injunction and Release." APP 0524 (D.I. 3593) (emphasis added). In spite of these clear statements of law, the CAGO, somewhat contradictorily, concluded that because the claim could not have been released by any private person and "[b]ecause the Attorney General has neither waived nor released the People's CFCA claims, the People's claims are not affected by the Motion and relief sought therein" and therefore did not oppose the specific relief sought in Lennar's motion. APP 0524 (D.I. 3593).

This is where the bankruptcy court erred. CACC was not suing Lennar in its own capacity, but as relator to the People of the State of California. Regardless of whether the CAGO did not oppose the specific relief sought in Lennar's motion, the law is clear: the FCA claim could not have been released or discharged via

14

bankruptcy except by the relevant prosecuting authority—in this case the CAGO. See *U.S. ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230, 233 (9th Cir. 1997); *U.S. ex rel. McNulty v. Reddy Ice Holdings, Inc.*, 835 F.Supp.2d 341, 360 (E.D. Mich. 2011). Yet, the CAGO did not have full knowledge of the claim before the release was executed, did not already investigate the allegations prior to their release, and did not already decide that it would not pursue the case. See APP 0521–25 (D.I. 3593). Rather, as in *U.S. ex rel. Green*, the government learned of the allegations of fraud and conducted its investigation only because of the filing of the *qui tam* complaint in 2017; the CAGO never participated in the bankruptcy proceedings in relation to any potential FCA claims. See *U.S. ex. rel. Green v. Northrop Corp.*, 59 F.3d 953, 956 (9th Cir. 1995).

To get around this undisputed material fact, Lennar attempts to conflate the CAGO representing the People of the State of California with other California agencies, arguing that "CalPERS and the [CAGO] were also actively involved in the Landsource bankruptcy." Answering Brief at 17. However, this is misleading and irrelevant. As confirmed by the CAGO, "the CFCA claim does not belong to CalPERS" and "the Injunction and Release's effect on CalPERS is immaterial to the California Attorney General's rights under the CFCA" because CalPERS "does not have standing to bring, litigate, release or settle a CFCA claim." APP 0523 (D.I. 3593). Similarly, the CAGO's involvement in the bankruptcy on behalf of various California environmental agencies "is immaterial to the Peoples rights under the CFCA." APP 0522 (D.I. 3593). Simply, "despite what Lennar states, the government

has *not* released any CFCA claim." APP 0523 (D.I. 3593).

This should have been the end of the analysis. Unfortunately, the Delaware Bankruptcy Court misinterpreted the case law relating to FCA claims and determined that it was possible to separate CACC from the CAGO in this instance, and then sought to enjoin CACC and Nicholas Marsch only, seemingly relying upon on *U.S. ex rel Gebert v. Transp. Administrative* or *Travelers*. This is legal error. Rather, as explained in CACC's opening brief, *Gebert* was a unique case that is not instructive here. See OB at 26–27. In *Gebert* the FCA claim was barred *only* because the relator was the debtor in the bankruptcy proceedings and the FCA claim was only barred as to the debtor relator. 260 F.3d 909 (8th Cir. 2001). Because the relator was also the debtor in the bankruptcy, it would undermine the protections of the bankruptcy code if the *debtor* of the bankruptcy was able to obtain a recovery through a *qui tam* action after the bankruptcy had concluded. See *id.* at 916–17. If that occurred, then the creditors would not have been able or aware of those future assets. See *ibid.* In making this decision, the Eight Circuit was careful to limit the precedential effect to the "unique context" in *Gebert* and intended the case to have an "exceedingly narrow" application: where the relator was also the bankruptcy debtor. *Id.* at 317. By contrast, the strong policy justification present in *Gebert* is does not exist concerning CACC because CACC is not a bankruptcy debtor and any recovery by CACC would not upset the result of the bankruptcy proceeding. See *id.* at 916–17. The Bankruptcy Court overlooked the factual distinction between the Geberts and CACC.

Because CACC was not a debtor to the Landsource bankruptcy, the only party the Court must consider is the CAGO on behalf of the People of the State of California. Instead, as Lennar encourages this Court to do, the Delaware Bankruptcy Court erroneously did not consider notice to the CAGO, writing that "notice is not an issue" as to Mr. Marsch. APP 0619 (D.I. 3623 at 38:2–7). As repeated here throughout, and as confirmed by the CAGO itself, the prosecuting authority on behalf of real-party-in-interest did not have knowledge of and an opportunity to investigate the claims, thus the claims could not be discharged or released. See OB at 20–32; APP 0523–24 (D.I. 3593).

Similarly, as expounded in the preceding section, the *Travelers* case is not instructive, but rather inapplicable. To briefly reiterate: The CAGO *had no notice* of the potential FCA violations prior to the release or injunction and therefore could not have brought or raised any challenged to the injunction based thereon. See APP 0522 (D.I. 3593). Furthermore, *Travelers* did not consider the unique policies implicated in FCA actions and is inapposite to consider in this action when an FCA claim is pending in state court against a nondebtor. See *Travelers*, *supra*, 557 U.S. at 153–54. Indeed, the Supreme Court explicitly stated that the holding in *Travelers* "is narrow." *Id.* at 154; *see also id.* at 156 (Stevens, J., Ginsburg, J., dissenting).

Finally, Lennar's brief ignores the due process concerns completely. As the real party in interest—the People of the State of California—was not party to the bankruptcy, of concern here is not only enforcement against CACC, but also against the CAGO. Though Lennar argues that the CAGO is unaffected by the Delaware

Bankruptcy Court's order, the CAGO was also dismissed from the FCA action as a result of the order granting Lennar's motion and the CAGO may no longer intervene in the case because it was closed. See APP 0668, 0670 at #19. If the relief sought by Lennar was actually "limited to Mr. Marsch and CACC," as Lennar championed to the Delaware Bankruptcy Court, then the CAGO would not have been dismissed or affected. See APP 0618 (D.I. 3623 at 37:3 –38:4). Furthermore, Lennar, or its team of attorneys that claim to have knowledge and experience in the False Claims Act, could have disclosed the potential FCA violations in 2009 but chose not to. See OB at 24; compare Supp. APP. 1503 with APP 084–85 (D.I. 3539-2).[5] This result—to permit a company with relatively unlimited resources to clandestinely manipulate the bankruptcy process to protect it from violations of law that the company chose not to disclose at the time of the bankruptcy—is against due process, public policy, and the legislature's intentions when enacting the FCA law. See 11 U.S.C. § 1141, subd. (d)(6); *Broomall Industries, Inc. v. Data Design Logic Systems, Inc.* 786 F.2d 401 (Fed. Cir. 1986); *Green*, *supra*, 59 F.3d at 963, 965; *see also* 11 U.S.C. § 101, subd. (41).

In sum, the Bankruptcy Court made a legal error when it granted Lennar's

---

5 The very document relied upon by Lennar to show the purported thoroughness and negotiated-arms-length nature of the 2009 Confirmation Plan is silent concerning any potential violations of FCA laws or any notice of these potential violations having been given. See SUPP. APP 1441–87 (D.I. 2137 (White Declaration)).

motion because the CAGO never received notice nor had an opportunity to investigate the claims prior to the confirmation, thus it would be against due process, public policy, and Federal common law to enjoin CACC or the CAGO from continuing the FCA action. The Bankruptcy Court's order enjoining CACC from pursuing the FCA Action in California must be vacated.

## IV.    **The Bankruptcy Court Erred By Not Abstaining From This Matter**

Last, the Delaware Bankruptcy Court not only abused its discretion in refusing to abstain from this matter in light of the relevant factors, but also committed error as a matter of law when it disregarded a timely filed motion. Though Lennar's Answering Brief seemingly argues that under an abuse of discretion standard this Court is precluded from considering any of the twelve factors that the Delaware Bankruptcy Court should have considered—but didn't—and must affirm the Bankruptcy Court's decision not to abstain without any further review, this is inaccurate. See Answering Brief at 46. Rather, the Delaware Bankruptcy Court's decision not to abstain is a clearly erroneous legal conclusion and no reasonable person would reach the same result when considering the various factors presented by CACC in its opening brief. See OB at 14–20.

As a matter of law, the motion to abstain was not untimely and CACC was not required to seek reconsideration of the order reopening the bankruptcy case before filing such a motion, as Lennar implies without any authority or citation in support. See Answering Brief at 47. Rather, a motion to abstain may be filed at any time prior to a decision on the merits and requires only seven days' notice. 28 U.S.C.

§ 1334; Fed. R. Bank. Proc. §§ 5011, 9014. The initial motion filed by CACC was not procedurally defective and should not have been denied prior to the hearing on Lennar's motion to enforce. *Ibid.*; see Answering Brief at 46, fn. 15.[6] Similarly, there is no requirement that a party seek reconsideration of an order reopening a case instead of filing a motion to abstain as these two motions rely on distinct and separate analyses and grounds. Compare *ibid* with Fed. R. Civ. P. 52(b); see also Fed. R. Bank. P. §§ 7052, 9023, 9024; Fed. R. Civ. Proc. §§ 59, 60.

As a matter of substance, and to briefly reiterate from the opening brief, the Delaware Bankruptcy Court was not the most appropriate or best venue to litigate these claims. See Answering Brief at 48. The claims brought to Delaware by Lennar would have no effect on the Landsource, LLC bankruptcy estate, the FCA claims involved only state law causes of action pertaining to an unsettled area of law, the dispute was already pending in to Article III courts of competent jurisdiction, the claims against Lennar were not dependent upon any provisions of the Bankruptcy Code, and the bankruptcy debtor was not involved. See OB at 15–19. Similarly, California is the best suited location to adjudicate the claims raised by the relator in the FCA action. California is where Lennar's alleged fraud occurred, where millions

---

6  Although CACC contends the Motion to Abstain was timely filed on October 17, 2018, CACC filed a motion to shorten time pursuant to the Court's instructions to prepare and submit a motion to shorten time, received via email from the Honorable Judge Carey's clerk on October 19, 2018, at approximately 2:04 PM Eastern Time.

of California citizens allegedly lost nearly a billion dollars, where California state courts are familiar with California state law, and where the CAGO can oversee the FCA claims and intervene when appropriate. See OB at 8–9.

Finally, Lennar's third point regarding the motion to abstain (that the motion made no sense) lacks any citation to a legal authority, or even an explanation to support the conclusory statements therein. Answering Brief at 48. Nevertheless, Lennar's argument that CACC sought the Delaware Bankruptcy Court to abstain from the FCA action misunderstands the relief sought by the motion filed to the Court. As stated in the motion, CACC sought the Delaware Bankruptcy Court to "close this contested matter and the Landsource, LLC bankruptcy cases because the twelve factors governing abstention favor abstaining from this dispute and because abstention aligns with the public policy surrounding a bankruptcy court's jurisdiction post-confirmation." APP 0487 (D.I. 3589). CACC was not seeking the court to "'abstain' from adjudicating the merits of CACC's false claims act case," as characterized by Lennar's briefing. Answering Brief at 48.

The Delaware Bankruptcy Court erroneously disregarded a timely filed and valid motion without consideration thereof, which constitutes legal error for which this Court may review *de novo*. Similarly, no reasonable person would have denied the motion in consideration of the relevant factors detailed therein, which is an abuse of discretion. Under either theory, the Delaware Court's Order denying the motion to abstain must be vacated or reversed.

## Conclusion

For the aforementioned reasons, CACC respectfully requests that this Court vacate the Bankruptcy Court's orders. Nothing in Lennar's briefing changes the analyses presented in the Opening Brief, nor does Lennar contradict or contest the undisputed material fact that the CAGO did not have notice of any potential FCA violations in or around 2009 or any opportunity to investigate those claims until 2017. As a result, and as confirmed by the CAGO, these claims could not have been released by any private person, including Nicholas Marsch or Briarwood Capital, as asserted by Lennar. The People of the State of California may not be deprived of their day in court, and CACC should not be barred from acting as relator in a legitimate and meritorious claim filed on behalf of the People of California, based on any injunction or release from the Landsource, LLC bankruptcy that concluded in 2009.

Dated: April 15, 2019

s/ Stamatios Stamoulis
Stamatios Stamoulis (DE No. 4606)
Stamoulis & Weinblatt, LLC
6 Denny Road, Suite 307
Wilmington, DE 19089
Email: stamoulis@swdelaw.com

- and -

Robert E. Barnes (*pro hac vice*)
Tony Nasser (*pro hac vice*)
Barnes Law, LLP
601 South Figueroa Street, Suite 4050

22

Los Angeles, California 90017
Tel: 310-510-6211
Fax: 310-510-6225
Email: robertbarnes@barneslawllp.com
Email: tonynasser@barneslawllp.com

Attorneys for Citizens Against Corporate
Crime, LLC

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. Bank. Proc. Rule 8015 because it contains 6,012 words as counted by the word-processing system used to prepare the document.

Dated: April 15, 2019

s/ Stamatios Stamoulis
Stamatios Stamoulis (DE No. 4606)
Stamoulis & Weinblatt, LLC
6 Denny Road, Suite 307
Wilmington, DE 19089
Email: stamoulis@swdelaw.com