# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE LANDSOURCE COMMUNITIES DEVELOPMENT, LLC, *et al.*, | : : : | Chapter 11<br>Bankr. No. 08-11111-KJC<br>(Jointly Administered) |
| Debtors. | : : | |
| CITIZENS AGAINST CORPORATE CRIME, LLC, | : : : | Civ. No. 18-1793-CFC |
| Appellant, | : | |
| v. | : : | |
| LENNAR CORPORATION, | : : | |
| Appellee. | : : | |

Robert E. Barnes, Tony Nasser, BARNES LAW, LLP, Los Angeles, California; Stamatios Stamoulis, STAMOULIS & WEINBLATT, LLC, Wilmington, Delaware,

*Counsel for Appellant*

Daniel M. Petrocelli, David Marroso, Megan K. Smith, O'MELVENY & MEYERS LLP, Los Angeles, California; David B. Stratton, Marcy J. McLaughlin, PEPPER HAMILTON LLP, Wilmington, Delaware,

*Counsel for Appellee*

## **MEMORANDUM OPINION**

January 3, 2020
Wilmington, Delaware

## I. INTRODUCTION

Pending before the Court is an appeal by Citizens Against Corporate Crime, LLC and its sole member and officer Nicholas Marsch III (together, "CACC"), from the Bankruptcy Court's November 1, 2018 *Order Granting Lennar Corporation's Motion to Enforce the Injunction and Release in the Debtors' Joint Chapter 11 Plan and Confirmation Order* (B.D.I. 3613, APP659-62)[1] ("Enforcement Order"). The Enforcement Order was entered in the Chapter 11 cases of Landsource Development Communities, LLC and certain of its affiliates ("Debtors") following the Bankruptcy Court's July 17, 2018 Order reopening those cases (B.D.I. 3562, APP343-44) ("Reopen Order"), which CACC also challenges on appeal. The Enforcement Order granted appellee Lennar Corporation's ("Lennar") October 5, 2018 motion (B.D.I. 3581, APP416-60) ("Enforcement Motion"), which sought an order enforcing the injunction and release provisions contained in the Debtors' confirmed plan of reorganization (B.D.I. 2214-1) ("Plan") and the Bankruptcy Court's Confirmation Order (B.D.I. 2151, SA1644).

_____

[1] The docket of the Chapter 11 cases, captioned *In re LandSource Communities Development, LLC*, No. 08-11111 (KJC) (Bankr. D. Del.) is cited herein as "B.D.I. ___." The appendix filed in support of CACC's opening brief (D.I .6) is cited herein as "APP__," and the supplemental appendix (D.I. 13) filed in support of Lennar's answering brief (D.I. 12) is cited here as "SA___."

The Enforcement Order granted Lennar's request for relief and required CACC to dismiss with prejudice litigation pending against Lennar in the United States District Court for the Eastern District of California ("California Action"). The Enforcement Order also denied CACC's separate motion for abstention (B.D.I. 3607, APP567-80) ("Abstention Motion") as moot. For the reasons set forth herein, the Court affirms the Reopen Order and Enforcement Order.

## II. BACKGROUND

### A. The Debtors and the Chapter 11 Cases

The Debtors' primary business was developing master communities for residential and commercial land development. In February 2007, approximately 15 months before its bankruptcy filing, LandSource recapitalized its debt and membership. (B.D.I. 2137 ("White Decl."), SA1452-1454 at ¶ 10(d)). Before this transaction, Lennar and LNR Property Corporation each owned 50% of LandSource's member interests. *Id.* On February 27, 2007, in exchange for a 68% member interest in LandSource, MW Housing Partners III, L.P., which was 90%-owned by the California Public Employees' Retirement System ("CalPERS"), contributed $370 million in cash and $600 million in real property to LandSource. (*See* B.D.I. 2047-3 ("Supplement to Disclosure Statement"), SA1283; B.D.I. 1772 ("Disclosure Statement"), SA882). As a result of CalPERS's investment in LandSource, Lennar's 50% ownership interest was reduced to 16%. (White Decl.

2

at ¶ 10(d), SA1452-54). LandSource subsequently borrowed from new lenders to pay a $700 million distribution to Lennar in exchange for its reduced equity interest. (Supplement to Disclosure Statement at 11, SA1283). In its Complaint in the California Action, CACC alleged that these "2007 transactions" constitute a fraud on CalPERS. Like many businesses in the homebuilding sector, LandSource was devastated by the subprime mortgage crisis and, despite efforts to realign its business, became insolvent in 2008 and filed petitions under Chapter 11 on June 8, 2008 ("Petition Date"). (Disclosure Statement at 23, SA883).

## B.    The Settlement with Lennar

Lennar was the Debtors' largest unsecured creditor and filed proofs of claim in excess of $130 million against the jointly administered estates. (B.D.I. 2139 ("Lennar's Confirmation Br.") at 3, SA1490). Lennar's claims dwarfed those of other unsecured creditors, which totaled only $27.6 million. *Id.* Efforts to confirm a reorganization plan that left in place claims by and against Lennar did not succeed. The Creditors' Committee—which included Marsch's company Briarwood Capital—fought for a release of Lennar's claims against the Debtors to avoid Lennar receiving the majority of distributions and diminishing the recovery available for other creditors under the Plan. (White Decl. at ¶ 10(d), SA1452-54).

Following months of negotiation, the Creditors' Committee, secured creditors, and other parties in interest reached an agreement for a consensual Plan

("Lennar Settlement"). The Lennar Settlement included a complete release of

Lennar's unsecured claims in exchange for valuable consideration – the resolution

of potential causes of action the Debtors or others might assert against Lennar,

including causes of action based on the 2007 transactions. (Lennar's Confirmation

Br. at 2-6, SA1489-93; Supplement to Disclosure Statement at 11, SA1283; White

Decl., SA1452-54). Lennar agreed to contribute $140 million in cash to the Debtor

and to waive any distributions on its $130 million unsecured claim. (*See* B.D.I.

2214-1 ("Plan") at 39, 50; SA1748, 1759). In exchange, Lennar received a 15%

equity interest in the Reorganized Debtors, various assets, and a broad release from

**"any and all Claims** ... or liabilities whatsoever" held by **"any Person, in any**

**way relating to the Debtors, the Chapter 11 Cases, or the Plan."** (Plan at 39,

60, SA1748, 1769 (emphasis added)). The term "person" was defined to include

"any governmental unit or any political subdivision thereof." (*Id*. at 18). The

record supports Lennar's assertion that this settlement funded the Plan. (*See e.g.,*

SA1452-54, 1490, 1512-18, 1610-11; White Decl.; Lennar's Confirmation Br.;

B.D.I. 2140 ("Barclays' Confirmation Br."); B.D.I. 2142).

When the settlement was reached, a Supplement to Disclosure Statement

was filed on July 6, 2009 that described the Lennar Settlement in detail, including

the potential claims that would be released and enjoined under the Plan. The

Debtors also effected nationwide publication notice of LandSource's disclosure

statement. (B.D.I. 1850 (Affidavit of Publication in THE WALL STREET JOURNAL, SA1245)). The Creditors' Committee encouraged its constituents to vote in favor of the Plan. (Barclays' Confirmation Brief at 11, 23, SA1514, 1526). The vast majority of voting classes voted to accept the Plan. (B.D.I. 2143 (Declaration Regarding Tabulation of Votes), SA1617). Absent the Lennar Settlement, the Debtors' reorganization would not have been possible. (White Decl. at ¶ 5, SA1442-43).

The confirmed Plan incorporated the broad consensual third-party release of Lennar and the other terms of the Lennar Settlement. (Plan at 19, 60; SA 1728, 1769). The Plan also expressly reserved the Bankruptcy Court's post-confirmation jurisdiction to "resolve any disputes concerning any release of a non-Debtor hereunder or the injunction against acts, employment of process or actions against such non-Debtor arising hereunder." (Plan at 67-68, SA1776-77). The Confirmation Order includes injunction and release provisions that essentially mirror the Plan. (B.D.I. 2151 ("Confirmation Order") at 22-23, 42-43; SA1665-66, 1685-86). The Order directs that, "[u]pon the entry of the Confirmation Order with respect to the Plan, all Holders of Claims and Interest and other parties in interest . . . shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan." (*Id.* ¶ 34, SA1689). Neither Marsch nor his company opted out of the Release or objected to the Lennar Settlement prior to confirmation.

CalPERS and the California Attorney General's Office ("CAGO") participated in the LandSource bankruptcy. CalPERS, which was represented by private counsel, objected to an early iteration of the Debtors' Disclosure Statement on several grounds, but later withdrew its objection. (B.D.I. 1430 (CalPERS' Objection), SA809; B.D.I. 1677 (Withdrawal of Objection), SA850). CalPERS did not object to the Supplement to Disclosure Statement, which described in detail the Lennar Settlement and added the broad release of Lennar to the Plan. Like Marsch, CalPERS also did not object to the Plan or otherwise opt out of the Release prior to confirmation. CAGO appeared in the Chapter 11 cases on behalf of four state environmental agencies that were creditors or parties in interest in the bankruptcy. (*See* B.D.I. 676, 771, 775, 1012, 1031, 1185, 1207, 1571, 1633 (Notices of Appearance and Pro Hac Applications and Orders). Deputy Attorneys General participated in the proceedings, including by filing objections to an early Disclosure Statement and attending the confirmation hearing. (*See* B.D.I. 1445 (Water Resource Board Objection), SA0818). Like CalPERS, the CAGO did not object to the Lennar Settlement or the Injunction and Release in the Confirmation Order.

The Bankruptcy Court entered its Confirmation Order on July 20, 2009, and the Plan became effective on July 31, 2009. (B.D.I. 2151 (Confirmation Order),

SA1644; B.D.I. 2223 (Notice of Effective Date), SA1985). No party appealed or sought reconsideration of Plan confirmation.

## C. The California Action and Reopen Order

More than seven years later, on February 23, 2017, Marsch formed CACC in Wyoming. (B.D.I. 3582-1 ("CACC Articles of Organization"), SA2100-03). It is undisputed that Marsch is and has always been the sole and controlling member of CACC. (B.D.I. 3582-16 (CACC's Reponses to Interrogatories), SA2299-2302; B.D.I. 3582-17 ("CACC operating agreement") SA2304-08). One day after its formation, CACC filed its Complaint against Lennar in the California state court alleging claims under the California False Claims Act against Lennar and various Doe defendants on behalf of CalPERS. The California government investigated CACC's claims but ultimately filed in January 2018 a notice declining to intervene in the case. (B.D.I. 3539-4 ("Marroso Decl.") at ¶ 4, APP-93).

Lennar was served with the Summons and Complaint on April 17, 2018. (*Id.*) Relevant to the appeal, the claims alleged by CACC's Complaint relate to Lennar's conduct with respect to the February 2007 transaction and the LandSource Chapter 11 cases. The gravamen of the Complaint is that Lennar (1) "fraudulently induced [CalPERS] to enter into a Contribution and Formation Agreement which required CalPERS to contribute nearly a billion dollars in assets to LandSource," (2) then "induced CalPERS to allow [it] to strip all of the cash and

loan proceeds from the LandSource balance sheet in a 'Special Distribution,'"
which "placed LandSource on an inevitable and foreseeable path to bankruptcy,"
and (3) subsequently "filed, managed, and manipulated the LandSource
bankruptcy, causing a total loss to CalPERS." (B.D.I. 3582-2 ("Complaint") at ¶¶
18-20, 31, 37; APP108-112).

On May 17, 2018, Lennar removed the Complaint to the United States
District Court for the Eastern District of California, thus initiating the California
Action. (Case No. 2:18-cv-01269 TLN-DB, D.I. 1 (Notice of Removal), SA2406).
The next day, Lennar filed its Motion to Reopen in the Bankruptcy Court. (B.D.I.
3539, APP43-57). Lennar argued in support of its motion that the Bankruptcy
Court was best suited to interpret and enforce its own Confirmation Order based
upon, among other reasons, its familiarity with the LandSource Chapter 11 cases.
(*Id.* at 12, APP54). Lennar also argued that each and every claim asserted against
Lennar in the Complaint fell within the scope of the Injunction and Release in the
Confirmation Order. (*Id.* at 9-11, APP51, APP53). CACC filed the sole objection
to the Motion to Reopen on July 2, 2018. (B.D.I. 3552, APP292-312).[2]

The Bankruptcy Court granted Lennar's Motion to Reopen from the bench at

---

[2] While Lennar's Motion to Reopen was pending, on June 5, 2018, the California
district court approved a joint stipulation filed by Lennar and CACC to stay the
California Action pending resolution of the Motion to Reopen. (Case No. 2:18-cv-
01269-TLN-DB, D.I. 13; SA2414).

the July 17, 2018 hearing and issued its written order the same day. (Marroso
Decl., Ex. 25 (Hr'g Tr. at 33:7-11), APP378; Reopen Order, APP343-44). With
permission of the Bankruptcy Court, in July 2018, Lennar served discovery on
CACC to ascertain its owners, managers, and members. (Marroso Decl., Ex. 28,
APP466). Lennar eventually moved to compel, and the Bankruptcy Court ordered
CACC to respond. (B.D.I. 3574 (Order on Lennar's Request to Compel
Discovery), APP403-05). On the eve of Marsch's deposition, CACC produced
interrogatory responses and documents that establish without a doubt that Marsch
formed and wholly owns and controls CACC. (B.D.I. 3582, SA2299-2302).

### D.    The Enforcement Order

Lennar filed the Enforcement Motion on October 5, 2018. (B.D.I. 3581,
APP416-60). CACC filed the sole objection to the Enforcement Motion on
October 18, 2018. (B.D.I. 3593, APP520). The same day, CAGO filed a
Statement of Non-Opposition to Lennar's Enforcement Motion. (*Id.*) In its
Statement, CAGO stated that, "[a]s the real party in interest in the California
Action," the People of California **do not oppose Lennar's request**" that CACC
be required to dismiss the Complaint as a violation of the Injunction and Release in
the Confirmation Order and enjoined from taking further actions against Lennar in
violation of the Confirmation Order. (*Id.* at 4, APP521 (emphasis added)).

Eight days before the hearing on Lennar's Enforcement Motion, CACC filed an Abstention Motion and purported to set the motion for hearing the same day as the hearing on Lennar's Enforcement Motion. (B.D.I. 3589, APP478-90). A few days later, apparently realizing its procedural error, CACC filed a Motion to Shorten Notice on the Abstention Motion. (B.D.I. 3594, APP527-31). Lennar opposed CACC's Abstention Motion and its request for shortened notice on October 22, 2018. (B.D.I. 3596, APP555-60). The next day, the Bankruptcy Court denied CACC's motion to shorten time on the Abstention Motion "for the reasons stated in [Lennar's] Objection." (B.D.I. 3603, APP561-62). The following day, CACC re-filed its Abstention Motion and set it for hearing on November 14, 2018. (B.D.I. 3607, APP567-80).

Lennar's Enforcement Motion was heard on October 25, 2018. After hearing argument from the parties, the Court read into the record the pertinent provisions of the Injunction and Release in the confirmed Plan and Confirmation Order. (B.D.I. 3623 (10/25/18 Hr'g Tr.) at 35:17-36:21, APP616-17). The Bankruptcy Court explained that it would grant Lennar's Enforcement Motion for three reasons: (1) it is undisputed that Marsch was the "sole and controlling member" of CACC and that Marsch "formed CACC as a way of trying to get around and avoid the release and injunction provision provided in the confirmed Chapter 11 plan of LandSource which was not appealed and [h]as long, long since

become final;" (2) there is "no question" that "Mr. Marsch is in privity with CACC [and] Briarwood and is bound by the injunction and release;" and (3) "the people of California do not oppose the relief that Lennar has requested" and the "actual relief sought by Lennar is limited to Mr. Marsch and CACC." (*Id.* at 37:3-38:4, APP618).

On November 1, 2018, the Bankruptcy Court entered the Enforcement Order, requiring CACC and Marsch to "take all actions necessary to dismiss the Complaint" within seven business days. (Enforcement Order, APP659-62). The Enforcement Order incorporated all of the findings and conclusions of law stated on the record at the October 25 hearing. (*Id.*) As part of the Enforcement Order, the Bankruptcy Court also denied CACC's Abstention Motion as moot. (*Id.*)

CACC filed its Notice of Appeal on November 14, 2018. (B.D.I. 3615, APP663-66). CACC's appeal asks this Court to vacate (1) the Bankruptcy Court's July 17, 2018 Reopen Order, which reopened the Chapter 11 Cases closed back in 2013, for the limited purpose of adjudicating Lennar's Enforcement Motion; and (2) the Bankruptcy Court's Enforcement Order, which (i) granted Lennar's Enforcement Motion and (ii) denied CACC's Abstention Motion as Moot. (D.I. 1).

CACC did not seek a stay of the Enforcement Order pending this appeal. On November 14, 2018, one day after the deadline imposed by the Enforcement

Order, CACC filed a "Request for Consent to Dismiss Citizens Against Corporate Crime, LLC" in the California Action. (Case No. 2:18-cv-01269-TLN-DB, D.I. 17; SA2421). Rather than request dismissal of the California Action, as the Bankruptcy Court's order required, CACC requested only that it (CACC) be dismissed as a party to the action. (*Id.*)

On November 15, 2018, Lennar filed a Response to CACC's Request in the California Action, stating that the Request should be construed as a motion for voluntary dismissal of the California Action. (Case No. 2:18-cv-01269-TLN-DB (E.D. Cal.), D.I. 18; SA2428). Lennar's Response attached correspondence from the CAGO consenting to voluntary dismissal of the California Action. (*Id.* at 2). On November 16, 2018, the court dismissed the Complaint with prejudice as to CACC and closed the case. (*Id.*, D.I. 19 (Minute Order)).

Briefing of the appeal is complete. (D.I. 6, 12, 13, 16). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## III.  JURISDICTION AND STANDARDS OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees" and discretionary jurisdiction

over appeals "from other interlocutory orders and decrees." 28 U.S.C § 158(a)(1) and (3). In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir. 1999). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir. 1992).

The parties agree that the Bankruptcy Court's July 17, 2018 Order reopening the Chapter 11 Cases is subject to review for abuse of discretion. (D.I. 6 at 1, 9 (order to reopen closed bankruptcy case is reviewed for abuse of discretion); D.I. 12 at 1-2). With respect to the Enforcement Order, granting Lennar's Enforcement Motion and denying CACC's Abstention Motion as moot, CACC suggests that this Court should conduct *de novo* review. (D.I. 6 at 1-2). The Court disagrees.

In granting Lennar's Enforcement Motion, the Bankruptcy Court interpreted its own prior Confirmation Order and thus its ruling is subject to an "abuse of discretion" standard. *See In re Shenango Grp. Inc.,* 501 F.3d 338, 346 (3d Cir. 2007) ("We agree with the majority view that a bankruptcy court's interpretation of its own order ought to be subject to review for an abuse of discretion.").[3] The

_____

[3] In *Shenango,* creditors moved to reopen a bankruptcy case and to compel the debtor to make payments purportedly due under the confirmed Chapter 11 plan. 501 F.3d at 342. After reopening the case, the bankruptcy court granted the

factual findings underlying the Order were not contested by CACC and are not the subject of its appeal. (D.I. 6 at 20-32 (challenging only the Bankruptcy Court's interpretation and enforcement of its Confirmation Order, not its factual findings).

The Bankruptcy Court's denial of CACC's Abstention Motion as moot is also reviewed under the abuse of discretion standard. *See, e.g., In re BWP Gas, LLC*, 354 B.R. 701, 705 (E.D. Pa. 2006); *In re Greene*, 1999 WL 689711, at *3 (E.D. Pa. Sept. 7, 1999). As Lennar correctly points out, this deferential standard of review is consistent with the plain language of 28 U.S.C. § 1334(c)(1). *In re Direct Response Media, Inc.*, 466 B.R. 626, 658 (Bankr. D. Del. 2012) ("Permissive abstention arises under 28 U.S.C. § 1334(c)(1) which provides that 'nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for state law, from abstaining from

---

creditors' motion and ordered the reorganized debtor to make payments based on the court's interpretation of the plan. *Id.* at 343. On appeal, the Third Circuit noted that it had "yet to adopt a standard for reviewing a bankruptcy court's interpretation of its own order" and, following other circuits, adopted an abuse of discretion standard. *Id.* at 345. The Court explained that it would "defer to the interpretation of the Bankruptcy Court, which was directly involved in this lengthy and complex proceeding." *Id.* at 348. The Supreme Court cited *Shenango* approvingly in 2009 in the *Travelers* case, when it too afforded "substantial deference to" a bankruptcy court order enjoining dozens of lawsuits that violated a third-party release and injunction contained in the bankruptcy court's prior confirmation order. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 n.4 (2009) (holding that "[n]umerous Courts of Appeals have held that a bankruptcy court's interpretation of its own confirmation order is entitled to substantial deference").

hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.'"). "The pertinent case law demonstrates that bankruptcy courts have considerable discretion to decide whether to abstain under section 1334(c)(1)." *Bricker v. Martin*, 348 B.R. 28, 34 (W.D. Pa. 2006) (citing cases), *aff'd*, 265 F. App'x 141 (3d Cir. 2008).[4]

## IV. ANALYSIS

### A. The Bankruptcy Court Did Not Abuse its Discretion in Reopening the Chapter 11 Cases

CACC concedes that a bankruptcy court has "broad discretion" to reopen cases after an estate has been administered. (*See* D.I. 6 at 9). CACC argues, however, that the Reopen Order entered in this case should be vacated because the facts of this case do not satisfy the six factor-test set forth in *In re Holley Performance Prods.*, 2015 WL 4638024 (Bankr. D. Del. July 31, 2015). (*See id.* at

---

[4] CACC suggests that a recent District of Delaware opinion requires this Court to apply *de novo* review to the Bankruptcy Court's November 1, 2018 Order. (D.I. 6 at 1 (citing *In re Millennium Lab Holdings II, LLC*, 591 B.R. 559, 570 (D. Del. 2018) for the general proposition that the district court "reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law"). CACC is wrong for the reasons described above, and the *Millennium* case is inapposite. In that case, the district court was reviewing a confirmation order on direct appeal. In this case, the Confirmation Order became final in 2009 and never was appealed. Because the Bankruptcy Court was merely interpreting and enforcing the final Confirmation Order, an abuse of discretion standard applies. *Shenango*, 501 F.3d at 346; *see also Travelers*, 557 U.S. at 152 (bankruptcy court's confirmation order could not be collaterally attacked after becoming final).

10-14). CACC further argues that Lennar's Motion to Reopen constituted an improper "removal" of the California Action to the Bankruptcy Court and that the Bankruptcy Court lacked jurisdiction to reopen the Chapter 11 cases. (*See id.* at 18-19). Finally, CACC argues that the "overarching policy" that bankruptcy courts should limit post-confirmation jurisdiction warrants vacating the Reopen Order. (*See id.* at 11-12, 19).

The Bankruptcy Court's decision is entitled to deference, and the required showing for an abuse of discretion is high. *In re Lazy Days RV Ctr. Inc*, 724 F.3d 418, 422-23 (3d Cir. 2013) ("We have interpreted Section 350(b) to give bankruptcy courts broad discretion to reopen cases after an estate has been administered."). Courts in this district have held that a bankruptcy court's decision should not be overturned based upon an abuse of discretion "unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant facts." *In re SemCrude, L.P.*, 428 B.R. 590, 593 (D. Del. 2010) (citation omitted). Thus, "a decision should not be overturned under the abuse of discretion standard, unless *no reasonable person would adopt the lower court's view*." *Id.* (emphasis added).

The Bankruptcy Court concluded that "cause" to reopen existed under section 350(b) of the Bankruptcy Code given the nature of the parties' dispute—the application of the Injunction and Release to the California Action filed by

CACC. *See* 11 U.S.C. § 350(b) ("A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."); *In re Lazy Days' RV Ctr. Inc.*, Case No. 09-13911-KG, D.I. 166 (Mem. Order) at *4 (Bankr. D. Del. June 16, 2011) ("when considering whether to reopen a bankruptcy case, a court should consider "the nature of the dispute and the Court's broad discretion."), *aff'd*, 724 F.3d 418, 422-23 (3d Cir. 2013).

The Bankruptcy Court's decision to reopen the Chapter 11 cases for the limited purpose of interpreting and enforcing the Confirmation Order is well supported by the relevant facts. As explained on the record at the July 17, 2018 hearing, the Bankruptcy Court granted Lennar's Motion to Reopen for two reasons: (1) CACC's claims against Lennar fall squarely within the scope of the Release and therefore, go "to the heart of the plan that was confirmed," and (2) "if in fact the motivating party [Mr. Marsch] is someone who could fairly be considered a serial harasser," the Bankruptcy Court is best equipped to resolve the matter by interpreting and enforcing its Confirmation Order. (B.D.I. 3582-2, Ex. 25 (07/17/18 Hr'g Tr.) at 33:7-14; APP378).

As Lennar correctly points out, federal courts, including the Third Circuit, consistently affirm bankruptcy court orders to reopen bankruptcy cases to permit bankruptcy courts to interpret and enforce their prior orders. *See, e.g.*, *In re Zinchiak*, 406 F.3d 214, 223 (3d Cir. 2005) (concluding that record contained

17

"sufficient grounds to support the Bankruptcy Court's decision to reopen for cause" because post-bankruptcy dispute "implicated issues regarding . . . an interpretation of [the bankruptcy] court's orders"); *Lazy Days*, 724 F.3d at 422-23 (cause existed to reopen bankruptcy case in order to interpret agreement incorporated into confirmed Chapter 11 plan); *see also In re Atari, Inc.*, 2016 WL 1618346, at *14 (Bankr. S.D.N.Y. Apr. 20, 2016) (reopening chapter 11 cases for purpose of adjudicating whether release provisions of plan bar prosecution of claims against non-debtor in foreign court); *In re Texaco Inc.*, 182 B.R. 937, 943 (Bankr. S.D.N.Y. 1995) (granting motion to reopen Chapter 11 case to enforce injunction provisions in confirmation order against parties engaged in state court litigation).

The Court agrees that the *Lazy Days* case is instructive here. In that case, after the bankruptcy proceeding had closed, the reorganized debtors and their landlord filed separate suits against one another in Florida state court. *Lazy Days*, Case No. 09-13911-KG (Bankr. D. Del.), D.I. 166 (Mem. Order) at *3. Both suits related to "a dispute whose genesis is the Confirmation Order." *Id.* There—as here—the confirmation order expressly retained the bankruptcy court's jurisdiction to hear disputes involving "interpretation, implementation, or enforcement of the Confirmation Order." *Id.* at *4; *see* Plan at 69 (retaining jurisdiction "[t]o resolve any disputes concerning any release of a non-Debtor hereunder or the injunction

against acts, employment of process or actions against such non-Debtor arising hereunder"), SA1778. When the reorganized debtors asked the bankruptcy court to reopen their case to adjudicate the dispute, the bankruptcy court agreed, noting that the landlord "ha[d] attacked a central provision of the Confirmation Order." *Lazy Days*, Case No. 09-13911-KG (Bankr. D. Del.), D.I. 166 (Mem. Order) at *4. On appeal, the Third Circuit determined that no abuse of discretion occurred because "the Bankruptcy Court was asked to reopen proceedings to resolve a dispute regarding the Settlement Agreement it had previously confirmed." *Lazy Days*, 724 F.3d at 423. It continued: "[B]ecause the Bankruptcy Court here was well suited to provide the best interpretation of its own order, it had jurisdiction to reopen." *Id.* (internal citation omitted).

The same is true here. The Bankruptcy Court reopened the case to resolve a dispute regarding the Injunction and Release in its Confirmation Order, which expressly bar all persons – including Marsch and CACC – from asserting claims against Lennar "relating to" the Chapter 11 cases or LandSource. (Plan at 60, SA1769; Confirmation Order at 42-43, SA1685-86). The Bankruptcy Court's decision to reopen is entitled to deference based on its familiarity with the complex and lengthy negotiations that led to the confirmed Plan, as well as the significance of the Lennar Settlement to the Debtors' successful reorganization. For these reasons, the Bankruptcy Court was best suited to interpret its own order and

properly exercised its discretion to reopen the cases and adjudicate the Enforcement Motion. *Travelers*, 557 U.S. at 151 (explaining that bankruptcy courts "plainly ha[ve] jurisdiction to interpret and enforce [their] own prior orders" and affirming bankruptcy court order enjoining multiple state law actions initiated in violation of third-party release and injunction in Chapter 11 plan and confirmation order); *In re Malmgren*, 277 B.R. 755, 759 (Bankr. E.D. Wis. 2002) ("If an order is to have any true meaning, if a party is to be able to place any justifiable reliance on an order, if a court is to have any credibility and command any respect, then it *must* enforce its own orders.") (emphasis in original).

CACC urges this court to review the Bankruptcy Court's decision *de novo* and employ a six-factor test for reopening that has not been adopted by the Third Circuit. (*See* D.I. 6 at 10 (reciting factors identified in *In re Holley Performance Prods.*, No. 09-1444, 2015 WL 4638024 (Bankr. D. Del. July 31, 2015)). However, this is not the appropriate standard of review, and *Holley* does not compel a finding that the Bankruptcy Court abused its discretion. *See id.* at *1 (bankruptcy court declined to reopen case where another court already had adjudicated substantial dispute between parties that was subject of motion to reopen). The Bankruptcy Court discussed *Holley* with the parties during the hearing on the Motion to Reopen. (*See* APP346 (D.I. 3582-2, Ex. 25 (07/17/18 Hr'g Tr. at 6-10, 14, 16, 18, 23-26, 31). The Bankruptcy Court found that case

distinguishable and ruled that the six factors discussed in *Holley* are not dispositive. The Court agrees that "a case can be reopened for cause, which gives the court wide discretion in determining what factors it should consider." (*Id.* at 27:2-6).

CACC's assertion that Lennar's Motion to Reopen constituted an improper "removal" of the California Action must also be rejected.[5] Lennar's Motion to Reopen is not a notice of removal, and neither party asked the Bankruptcy Court to adjudicate the merits of the California Action.

Finally, the Court rejects CACC's argument that the "overarching policy" that bankruptcy courts should limit post-confirmation jurisdiction warrants vacating the Bankruptcy Court's Order here. (*See* D.I. 6 at 11-12, 19). A bankruptcy court plainly has jurisdiction to enforce its own injunction. As the Bankruptcy Court explained at the July 2018 hearing, even though "the Third Circuit says that post-confirmation a bankruptcy court's jurisdiction contracts, [it] agrees with [Lennar] that what further action should be taken by [CACC], by whomever its controlled, goes to the heart of the plan that was confirmed here,"

---

[5] *See* D.I. 6 at 13 (collecting cases regarding narrowing of bankruptcy court jurisdiction post-confirmation). CACC also cites *In re Fla. Precast Concrete, Inc.*, 139 B.R. 37, 38 (Bankr. M.D. Fla. 1992) for the proposition that the California state court was the "appropriate venue" to enforce this Court's Confirmation Order. (*Id.* at 13). But *Florida Precast* did not involve enforcement of a bankruptcy court order at all – it addressed jurisdiction over a breach of warranty action. 139 B.R. at 38.

and therefore the dispute falls within the Bankruptcy Court's core jurisdiction, which was expressly retained in the confirmed Plan. (Reopen Order, APP343-44; 07/17/18 Hr'g Tr., APP378).

### B. The Bankruptcy Court Did Not Abuse its Discretion in Granting the Limited Relief Sought by Lennar's Enforcement Motion

As the Bankruptcy Court explained at the October 25, 2018 hearing, the "undisputed evidence" demonstrates that "Mr. Marsch formed CACC as a way of trying to get around and avoid the release and injunction provision provided in the confirmed Chapter 11 plan of LandSource which was not appealed and has long, long since become final," and "[t]here is no question . . . that Mr. Marsch is in privity with CACC, Briarwood and is bound by the injunction and release." (10/25/18 Hr'g Tr. at 37:2-10, 38:2-14; APP618-19). CACC provides no basis to challenge Judge Carey's opinion as a "clear error in judgment." *SemCrude*, 428 B.R. at 593.

### 1. The Enforcement Order is Narrowly Tailored

CACC claims that the Enforcement Order is an "exceptional decision . . . to step into the middle of a California scandal that must be adjudicated under the substantive law of the state of California, that concern mostly California witnesses and California incidents, and that involves multiple non-parties." (D.I. 6 at 9). CACC further claims that "Lennar should not be allowed to foreclose the people of California from pursuing a claim." (*Id.* at 32). However, the Court finds no

22

support for these characterizations. Here, the Bankruptcy Court merely enforced its *existing* injunction against *specific* violators: Marsch and CACC.

CACC's assertion that the Order enforcing the Injunction and Release is "against CACC, but also against the CAGO" is also incorrect. (*See id.* at 20). As Lennar, the CAGO, and CACC informed the Bankruptcy Court last fall – and as the Bankruptcy Court stated on the record and in the Enforcement Order – the Order does not bind the People of California. (10/25/18 Hr'g Tr. at 37:15-16, APP618 (The Court: "[T]he actual relief sought by Lennar is limited to Mr. Marsch and CACC.")); Enforcement Order, APP660 ("[T]he People of the State of California do not oppose the Motion because it does not impact the California Attorney General's rights under the California False Claims Act.")).

Contrary to CACC's assertions the Enforcement Order also does not implicate "California witnesses" or "California incidents," and does not involve "multiple non-parties." (*See* D.I. 6 at 9). Rather, the Enforcement Order binds *only* CACC, Mr. Marsch, and their agents. It holds that "Citizens Against Corporate Crime, LLC and its sole member and officer, Nicolas Marsch III, knowingly violated this Court's Injunction and the Release in the Confirmation Order and confirmed Plan"; requires Mr. Marsch and CACC to "dismiss with prejudice the litigation pending against Lennar in the United States District Court for the Eastern District of California"; and "enjoin[s] CACC, Mr. Marsch, and their

agents from pursuing enjoined and released claims and causes of action against Lennar in further violation of the Confirmation and Confirmed Plan." APP660 (D.I. 3613 (Enforcement Order)).

### 2. The California Action Is Barred by the Injunction and Release

CACC argues that the Bankruptcy Court abused its discretion in enforcing the Confirmation Order because the California Action is not barred by the Confirmation Order's Injunction and Release. The Court disagrees. As Lennar correctly points out, the Bankruptcy Court's decision cannot constitute an abuse of discretion, as the Enforcement Order is based on three undisputed facts that are dispositive – none of which CACC contests.

First, and as the Bankruptcy Court explained at the October 25, 2018 hearing, the Confirmation Order and confirmed Plan released and enjoined "*any and all Claims . . . Causes of Action or liabilities* . . . held by *any Person . . .* based in whole or in part upon *any act or omission, transaction,* or other occurrence taking place on or before the Effective Date *in any way relating to the Debtors, the Chapter 11 Cases, or the Plan*" and enjoining the prosecution of those claims by "any Person, whether *directly, derivatively or otherwise.*" 10/25/18 Hr'g Tr. at 35:17-36:21, APP616-17; Confirmation Order at 42-43 SA1685-86 (emphasis added); Plan at 18, SA1727 (defining "Person" to include "any governmental unit or any political subdivision thereof").

Second, it is undisputed that the allegations in the California Action "relate to" the LandSource bankruptcy and Plan. (*See* Complaint at ¶¶ 18-20, 31, 37, APP104 (alleging that Lennar "fraudulently induced CalPERS to enter into a Contribution and Formation Agreement which required CalPERS to contribute nearly a billion dollars in assets to LandSource," then "induced CalPERS to allow [it] to strip all of the cash and loan proceeds from the LandSource balance sheet in a 'Special Distribution,'" which "placed LandSource on an inevitable and foreseeable path to bankruptcy," and subsequently "filed, managed, and manipulated the LandSource bankruptcy, causing a total loss to CalPERS")). As the Bankruptcy Court explained, CACC's claims "arise out of pre-bankruptcy conduct and alleged fraud," including a "scheme allegedly . . . hatched in 2007 which was pre-bankruptcy." (10/25/18 Hr'g Tr. at 23:25-24:20, APP604-05).

Third, it is undisputed that Marsch and his wholly-owned companies, Briarwood and CACC, are bound by the Injunction. The Injunction binds all persons, subject to the limits of due process, including "the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in [(A) or (B)]." FED. R. CIV. P. 65(d)(2).[6] As the Bankruptcy Court explained, "notice is not an issue"

---

[6] *See also Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. 168, 179 (1973) ("[A]

here, because Marsch, "as a representative of his company, Briarwood, sat on the Creditors Committee, was active and involved in the Chapter 11 proceeding . . . [and] [t]here is no question . . . based on the undisputed facts here, that Mr. Marsch is in privity with CACC, Briarwood and is bound by the injunction and release" of the Confirmation Order. (10/25/18 Hr'g Tr. at 38:2-7, APP619).

CACC does not dispute on appeal that Marsch is bound by the Confirmation Order or that CACC is in privity with Marsch. The Court agrees with Lennar that these undisputed findings of fact and conclusions of law are dispositive.

### 3. The Bankruptcy Court Correctly Rejected CACC's Contention that the Release and Injunction in the Confirmation Order and Plan Are Unenforceable as to CACC and Marsch as *Qui Tam* Relators

As CACC is bound by the Injunction and Release, CACC argued below that the Injunction should be read to exclude *qui tam* claims under the California False Claims Act "[a]s a matter of policy." (B.D.I. 3590 (Objection to Enforcement Motion, APP492). CACC asserts these same arguments on appeal. The Court finds no abuse of the Bankruptcy Court's discretion in rejecting these arguments.

First, the Confirmation Order became final over nine years ago and was never appealed by any party – not Briarwood, Marsch, the State of California,

---

decree of injunction not only binds the parties but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." (citations omitted).

CalPERS, or the CAGO. The Court agrees that CACC's challenge to the enforceability of the injunction years later is untimely and barred by principles of *res judicata*. The Court agrees with Lennar that the *Travelers* case is illustrative. In *Travelers*, the bankruptcy court approved a settlement that was the "cornerstone" of the reorganization. *Travelers*, 557 U.S. at 141. Under the settlement, Travelers paid $80 million to the bankruptcy estate in exchange for a release and injunction of "any and all claims, demands, allegations, duties, liabilities and obligations (whether or not presently known) which have been, or could have been, or might be, asserted by any Person against" Travelers. *Id.* at 142. More than a decade later, various plaintiffs began filing actions against Travelers. *Id.* Travelers went to the bankruptcy court and asked for an order enforcing the release and injunction and requiring dismissal of the state court actions. Following litigation and appeals, the Supreme Court concluded that "the terms of the injunction bar the actions" and that "the finality of the Bankruptcy Court's orders following the conclusion of direct review generally" barred the state court suits, which were essentially "challeng[ing] the enforceability of the injunction." *Id.* at 140. Because the bankruptcy court's "orders became final on direct review over two decades ago," the Court held that the state court actions "constituted collateral attack[s] that cannot be squared with *res judicata* and the practical necessity served by that rule." *Id.* at 154; *see also In re Bros. Materials*

*Ltd.*, 580 B.R. 475, 480 (S.D. Tex. 2017) (holding that *Travelers* prohibits a party from "attempting to bootstrap a jurisdictional challenge to a confirmation order [by opposing] an enforcement action."); *In re Arctic Glacier Int'l, Inc.*, 901 F.3d 162, 166 (3d Cir. 2018) ("When a bankruptcy court enters a confirmation order, it renders a final judgment. That judgment, like any other judgment, is *res judicata*. It bars all challenges to the plan that could have been raised.").

Here, as in in *Travelers*, the California Action was filed in violation of a final bankruptcy court order that has been in place for several years. Despite notice of the plan and its release provisions prior to the confirmation hearing, neither Marsch, CalPERS, nor any other purported victim of Lennar's alleged fraud challenged the Lennar Settlement by objecting to the Plan, opting out of the Release, or appealing the Confirmation Order. The Bankruptcy Court correctly granted the Enforcement Motion consistent with principles of *res judicata*.

Second, separate and apart from the Injunction, the Bankruptcy Court properly granted the Enforcement Motion because the Release is enforceable as to CACC and Marsch. Contrary to CACC's assertion, there is no rule that pre-filing releases of *qui tam* false claims act claims are unenforceable because they "violate the public policy." (D.I. 6 at 20). As Lennar correctly argues, federal courts routinely enforce pre-filing releases of *qui tam* false claims act claims whether entered into by a relator alone, the purported government victim alone, or both,

particularly where the parties plainly intended to release the false claims act

claims.[7] The *Gebert* case is instructive. In *Gebert*, as part of a litigation settlement

agreement that arose in a personal bankruptcy proceeding, the Geberts agreed to

release their former employer and its principal from "any and all manner of action,

causes of action, claims, debts, demands, damages, liabilities, controversies . . .

suits, known or unknown." *Gebert*, 260 F.3d at 912. The settlement was approved

by a bankruptcy court, and the parties avoided litigation. Years later, the Geberts

filed a *qui tam* law suit asserting federal false claims act claims against the former

employer and its principal. The defendants sought dismissal and argued, *inter alia*,

that the Geberts could not proceed because the previous bankruptcy settlement and

release barred the claims. The district court granted summary judgment on

multiple grounds, including release and *res judicata*. On appeal, the Geberts

argued – as CACC argues here – that "enforcement of a pre-filing release of a *qui*

---

[7] *See, e.g., U.S. ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 917 (8th Cir. 2001) (enforcing prefiling release of claims against relators where release was integrated into bankruptcy settlement); *U.S. ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230, 234 (9th Cir. 1997) (enforcing prefiling release from state court settlement against false claims act relator); *U.S. v. Purdue Pharma L.P.*, 600 F.3d 319, 333 (4th Cir. 2010) (enforcing prefiling release against relator); *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1171 (10th Cir. 2009) (same); *see also U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 910 (9th Cir. 1998) (dismissing relator's claim where government had settled false claims act suit); *U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 748 (9th Cir. 1993) (a *qui tam* relator's Article III standing is dependent upon government's standing); *U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1154 (2d Cir. 1993) (same).

29

*tam* claim is against public policy because the release was executed without the United States' knowledge or consent and because the Geberts are not the real party in interest." *Id.* at 915. The Eighth Circuit rejected the Geberts' argument, explaining that courts have acknowledged a "threat that general pre-filing releases pose to the viability of *qui tam* provisions," but a "threat to the public interest" was not implicated by the Geberts' court-ordered settlement agreement because "the parties clearly agreed to prohibit all future claims – *qui tam* claims included." *Id.* at 916. It continued, "[t]he harm to the public interest is further limited in that the settlement agreement and release only runs to parties to the agreement, not to other relators or to the government." *Id.*

Like *Gebert*, the false claims act claims asserted here by CACC were expressly considered and released by the active participants in the Chapter 11 cases, including Mr. Marsch and Briarwood. (Supplement to Disclosure Statement, SA1283 (discussing facts underlying California Action)). Additionally, the Injunction in the Confirmation Order explicitly extends to "derivative" claims – including *qui tam* actions on behalf of the State of California, CalPERS, and/or the CAGO. (Plan at 60, SA1769). Also, as in *Gebert*, the Enforcement Order was directed only to parties to the LandSource bankruptcy case and their privies: "CACC, Marsch, and their agents." (Enforcement Order at 3, APP660).[8] For these

---

[8] Because of the limited scope of the Enforcement Order, CACC's arguments

reasons, the Bankruptcy Court correctly concluded that the Injunction and Release are enforceable as to CACC and Marsch.

CACC's final argument that Section 1141(d)(6) of the Bankruptcy Code required the Bankruptcy Court to deny the Enforcement Motion must also be rejected. Section 1141(d)(6) governs the discharge of a debtor's debts. Under section 1141(d)(6), certain types of fraud claims will not be extinguished by a *discharge of a debtor's liabilities* through confirmation of a plan of reorganization. *See* 11 U.S.C. § 1141(d)(6)(A). Here, the Bankruptcy Court properly concluded that Section 1141(d)(6) is inapplicable. Lennar was not a debtor in these cases and is not claiming that liability was extinguished based on discharge. Contrary to CACC's assertions, Section 1141(d)(6) places no limits on the Bankruptcy Court's authority to approve settlements or to enter releases and injunctions with respect to fraud claims held by government agencies – whether for debtors or other interested parties as part of a reorganization plan. *See id.* CACC cites no authority which suggests that Section 1141(d)(6) provides a basis for a district court to vacate a bankruptcy court's order interpreting its own injunction. Finally, the discharge provisions of the confirmed Plan are – like the Release and Injunction provisions –

---

regarding whether the CAGO received notice of the Injunction and Release and whether CAGO investigated CACC's purported claims against Lennar have no bearing on this Court's consideration of whether the Bankruptcy Court abused its discretion.

final judgments for purposes of *res judicata*. The Bankruptcy Court was well within its discretion to grant the Enforcement Motion.

## C. The Bankruptcy Court Did Not Abuse its Discretion in Denying CACC's Abstention Motion as Moot

CACC's challenge to the Bankruptcy Court's exercise of its discretion to deny the Abstention Motion also fails. (D.I. 6 at 21-27; B.D.I. 3607 (CACC's Abstention Motion), APP567). The Bankruptcy Court's decision regarding whether or not to permissively abstain is subject to substantial deference on review, particularly because permissive abstention is a "narrow exception to the duty of [the bankruptcy court] to adjudicate a controversy properly before it" that "rarely should be invoked." *Direct Response Media*, 466 B.R. at 658.

Because of the extraordinary nature of the permissive abstention doctrine, it is not surprising that CACC cites no case where a decision denying an abstention motion was vacated on appeal as an abuse of discretion. And with respect to the facts of this case, CACC has made no showing that the Bankruptcy Court abused its discretion by denying the Abstention Motion as moot. As the Bankruptcy Court explained at the October 25, 2018 hearing, CACC's Abstention Motion was "moot as a result of the" Enforcement Order. CACC does not challenge or address this conclusion. Rather, CACC merely re-argues the merits of its Abstention Motion. CACC's dissatisfaction with the Court's decision is not a demonstration of "clearly

erroneous finding of fact, legal conclusion or improper application of law to fact."

*Infinity Invs. Ltd. v. Kingsborough*, 316 B.R. 141, 144 (D. Del. 2004).

## V. CONCLUSION

The Court concludes that the Bankruptcy Court properly ordered the reopening of the Chapter 11 cases and enforced the Injunction that lies at the heart of its prior Confirmation Order. The Court will therefore affirm the Bankruptcy Court's July 17, 2018 order reopening the Chapter 11 cases, and its November 1, 2018 Enforcement Order granting Lennar's Enforcement Motion and denying CACC's Abstention Motion. The Court will issue a separate Order consistent with this Memorandum Opinion.